E-FILED
Friday, 17 February, 2017  04:35:23 PM
Clerk, U.S. District Court, ILCD

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS

JOSEPH SWISEGOOD, on behalf of himself
and all others similarly situated,

Plaintiff,

v.

GENERAC POWER SYSTEMS, INC.,

Defendant.

Case Number : 4:17-cv-04058

**CLASS ACTION COMPLAINT**

**DEMAND FOR JURY TRIAL**

Plaintiff Joseph Swisegood ("Plaintiff") files this class action complaint on behalf of himself and all others similarly situated, by and through the undersigned attorneys, against Generac Power Systems, Inc. (hereinafter "Generac" or "Defendant"), and states as follows:

## INTRODUCTION

1.      This is an action on behalf of Plaintiff, and a class of all others similarly situated, against Generac, the manufacturer of generators that are defective as they are prone to leak oil.  As evidenced by its issuance of at least one service bulletin concerning the tendency of its generators to leak, Generac knew of this defect.  Yet it failed to tell its customers that their generators were prone to leaking, despite the fact that it knew that this leaking was likely to occur while the generators owned by Plaintiff and the putative class members were still under warranty.  As a result of Generac's failure to remedy this defect in its generators, their generators not only leaked oil, but were prone to motor failure resulting from the generators running without sufficient oil—motor failure that Generac has systematically refused to remedy.  Thus, a relatively small defect that could

have been easily fixed by Generac has, due to Generac's misconduct, resulted in Plaintiff and class members being forced to expend considerable sums to replace the motors of their generators.

## PARTIES

2.      Plaintiff Joseph Swisegood is a resident of Nauvoo, Illinois.  Plaintiff Swisegood purchased a 120/240 volt GP 3250 model Generac generator in 2016 at his local Menards.  Prior to purchase, he reviewed the box, and he had a conversation with the store's sales agent. The sales rep told Mr. Swisegood that the Generator was a reliable and durable product and would come with a warranty.  Plaintiff Swisegood relied on those representations and decided to purchase the Generator.  Plaintiff Swisegood paid $487.00 for the Generator.  After three months, the Generator began to leak oil and not work as advertised.  As a result, Plaintiff Swisegood called Defendant and put them on notice of the defects he noticed.  Defendant refused to repair the Generator or honor the warranty that it came with.

3.      Generac is a Wisconsin corporation with its principal place of business in Waukesha, Wisconsin.  Generac conducts business throughout the State of Illinois and the United States.  It designed, tested, manufactured, and warranted the defective generators in Wisconsin and advertised, marketed, warranted, and sold the defective generators to Plaintiff and putative class members in Illinois and throughout the United States.

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2) because the Plaintiff and Defendant are of diverse citizenship and the aggregate amount in controversy exceeds five million dollars ($5,000,000.00) exclusive of interest and costs.

5.      Venue is proper in this Court pursuant to 28 U.S.C. §1391 because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred, a substantial part of the property

that is the subject of this action is situated, and Defendant is subject to personal jurisdiction in this District.

6.      By marketing, distributing, promoting, and/or selling (either directly or indirectly through third parties or related entities) generators to purchasers throughout Illinois, Defendant obtained the benefits of the laws of Illinois and profited from Illinois commerce.

## FACTUAL ALLEGATIONS

7.      Upon information and belief, Defendant is, and at all relevant times was, engaged in the business of designing, testing, developing, manufacturing, distributing, marketing, and selling generators throughout the United States.

8.      Defendant manufactures a variety of generators, including portable, residential, commercial, and industrial models, and apparently has for decades.  On its website, Defendant states that it was founded in 1959.  Defendant characterizes itself as "the #1 manufacturer of home backup generators."

9.      Various models of Generac generators, including the 120/240 volt GP 3250 model unit, are defective, in that they are prone to leak oil during normal usage. These leaks occur because the seals on the generators are faulty, either because the bolts are not long enough, the gaskets are insufficient, and/or the seal created by the bolts together with the gasket is improperly designed.

10.      Defendant has been aware of this problem for some time.  Indeed, Defendant issued a bulletin on the leak issue numbered  SIB-12-04-EACG.

11.      Despite knowing that its generators tend to leak oil and have defective seals, Generac chose not to inform its customers of the defect.  It did this despite the fact that, at the time when it learned of the defect in its generators, many remained under warranty.

12.    When the leak defect is addressed early, it is a relatively minor problem that can be easily remedied. When the leak defect goes unaddressed, however, it drains the generator of oil. Running the generators without sufficient oil in turn causes their motors to burn out.

13.    As a result, expensive Generac generators not only tend to leak oil, but have motors that prematurely burn out.

14.    Despite the fact that the motors of Generac generators burn out directly as a result of a defect that was known to Defendant and undisclosed to consumers, Generac has systematically refused to fix the burned out motors stemming from the leak defect, irrespective of whether they burn out during or after the two-year warranty period.

15.    As a result of Defendant's deceptive and unlawful conduct, consumers are forced to spend substantial sums (often well in excess of $1000) to repair the motors on their Generac generators.

### The Generac Warranty And Marketing

16.    All Generac generators are expressly warranted with Plaintiff's GP 3250 model having a 2-year limited warranty.  All Generac generators in the GP line carry the same 2-year limited warranty. [1]

17.    In addition, Generac has undertaken a nationwide marketing campaign regarding their line of generators. Generac's marketing materials, distributed by themselves and through their distributors, make the following marketing representations about Generators such as the ones purchased by Plaintiff:

---

[1] *See* Ex. A, Generac Power Systems Limited 2 Year Warranty for Portable Generators.

    a.  "Generac's OHV engine with splash lubrication provides a long engine life."

    b.  "Large capacity steel fuel tank…provides durability and extended run times."

    c.  "Hardened steel tube cradle for added durability and strength."

    d.  "During a power outage, Generac portable generators make sure the most important items—lights, refrigerators and freezers, sump pumps, even space heaters and window air conditioners—are up and running, minimizing any disruption to your lifestyle."

    e.  "When you choose Generac, you're choosing to have peace of mind and the power to live."

    f.  "Generators are often required to run for hours, days or even weeks at a time. Continuous use can cause a lot of strain on engines not specifically engineered to withstand extended run times. We have developed robust engine solutions to ensure our generators provide the reliability necessary to power through these situations."

    g.  "Generac offers more options than anyone else, to make sure there's a system to fit your needs. All are tested and listed for safe, reliable performance."

    h.  "Consumers choose Generac automatic generators not only for their proven reliability, but also for the innovative features engineered with home and business owners in mind."

    i.  "Tough. Reliable. Purpose-Built."

18.    These marketing representations comport with the representations upon which Plaintiff Swisegood relied when purchasing the Generator. However, the generators purchased by Plaintiff Swisegood and the Classes are by no means reliable, durable, or capable of "withstand[ing] extended run times".

## Experience of Class Members

19.    Plaintiff's experience is by no means an isolated or outlying occurrence. The Internet is replete with consumers complaining of failures and deficiencies with Generac generators.

The following represents a small sampling of Internet postings by Generac generator purchasers describing their experiences with the defective generators. These postings are reproduced without correction or alteration.[2]

**GENERAC GP5500 GAS LEAK (posted 4/13/12)**

I purchased 2 Generac GP5500 portable gas generators One unit from Lowe's on 9/11/11 and the other unit from Power Equipment Direct on 8/30/11. Both generators are made in China. I thought I was purchasing a Generator made in the U.S.A., like Generac claims. NOT TRUE.

I filled one unit with gas, which was purchased the same day through the provided screen/filter, in the filler opening. The unit started and ran. After 6/10ths running hour on the built in hour meter, I happened to walk near the generator, and was hit with a tremendous gas smell. I looked down at the generator and saw gas pouring out of the front part of the air cleaner cover as well as the rear portion of the carburetor. I immediately shut the generator down, and closed the fuel supply. I then pulled the air cleaner cover off, removed the double foam filter, and opened the fuel supply. Gas was pouring out of the right side carburetor inlet.

I immediately called Generac and was told by a Customer Service representative to bring it to an authorized service center. (By the way, the nearest is 40 miles.) I had asked if there is a known problem with this carburetor. He would not answer my question. He replied again, "bring it to an authorized service center". I called the service center to explain my problem, and asked if they have had other gas leak problems with these generators. They told me they had several units come in with the same gas leak.

Later that evening, I searched the Web. I found many posts and topics on this "GENERAC GAS LEAK PROBLEM". There's even a video on Youtube. I also found out it's not just the GP5500 series. It has happened to the GP3250, GP6500, as well as other wattage models in the Generac line. Today, April 13, 2012, I called

---

[2] Indeed, these leaks are so pervasive and frequent that several different video tutorials exist on the Internet to show consumers how to fix the leak on their own. *See*, *e.g.*, https://www.youtube.com/watch?v=DBseJP0co2M (last viewed Feb. 14, 2017); *and* https://www.youtube.com/watch?v=PoourNE7ydY (last viewed Feb. 14, 2017); *and* https://www.youtube.com/watch?v=IHbD2Xcr9jQ (last viewed Feb. 14, 2017). However, Plaintiff and the Class Members are in a Catch-22 when Generac refuses to repair their generators because the warranty is void if the generators are modified or altered in a way not authorized in writing by Generac.

Generac again to file a formal complaint. I spoke to [redacted]. She noted my complaint and issued me a complaint case number.

I had a return call from [redacted], who is a resolution specialist for Generac. She told me to bring the units to an authorized service center to identify the problem. I will be bringing both units in for service, and to find out what's really going on with these carburetors.

I do not trust these units even if they are fixed. It's a poor design. I saw one post that another consumer brought his generator in for service 3 times. The carburetor still leaked gas. I don't feel safe having 5 gallons of gas sitting on top of the engine. This is just a major catastrophe waiting to happen. I WILL NOT ENDANGER MYSELF, OR MY FAMILY MEMBERS. GENERAC NEEDS TO ADDRESS THIS PROBLEM, AND START THE RECALL PROCESS. I'm sure, thousands of units sold within the last year, have this type of carburetor.  I KNOW GENERAC KNOWS OF THIS PROBLEM. THEY HAVE RESPONDED TO COMPLAINTS ON THIS WEBSITE.

https://www.saferproducts.gov/ViewIncident/1243222

**Generac GP 5500 Generator Fuel Leakage - Small Engine Service Bulletin Date: 10/1/12**

…

I own a two year old Generac GP 5500 (model 005623-1) with Huayi carb that has this problem. Inspection of the float needle showed it to be made of a bright aluminum alloy, with a synthetic tip. This needle had corrosion and pitting on it's body, while the synthetic tip had minor wear. Their was no corrosion on the float shaft or needle spring. The needle did not appear to have an plating to protect it from corrosion. I believe the lack of an plating to be the cause of this fuel leak problem.

http://home.earthlink.net/~kjvann/HauaiSB.pdf

**Carey L of Bismarck, ND on Aug. 30, 2016**

We purchased a Generac GP17500 portable generator from NorthernTool.com the end of May and put it into service on June 1st for our summer-only business. It ran for 20 minutes on the first day of our new business and then immediately quit completely. Generac told us to contact an electrician, which we did and paid for at our own expense. He informed us that the switch was bad. It was then sent to Generac's "authorized service center". The authorized service center has claimed that it was a bad generator sent from the manufacturer and he has suggested that we be refunded. He was still waiting for a part on July 6th, when we last spoke to him. For the first 10 days, we rented another Generac and it quit after 10 days.

It is obvious that Generac is not able to handle our needs due to the quality of the Generac generator. Generac and Northern Tool have both refused to refund our money even after the authorized service center informed them that it was a factory defect that caused the problems in the first place. WARNING... if you have any problems after purchasing this generator, you will likely be ignored.

https://www.consumeraffairs.com/homeowners/generac-power-systems.html

**Generac home generator leaking through carb (brand new, basically) (posted 6/11/12)**

I have a generator that I used maybe only twice, less tan 100 hours (I waited literally 12+ hours one night at a Home Depot just before a hurricane in NJ). Let it sit over the winter. Did not drain gas.

I now won't start. If I leave the gas valve in the on position the gas will drain out through the carburetor. Now from what I read the gas probably went bad and varnished up the pin and all and it's stuck open. Or dirt but I doubt it as it is barely a year old and has a gas filter.

What is the best way to fix this? If I can help it I don't want to rebuild the carb. Can't I drain the gas maybe and but something in gas tank that could dissolve the gum in there??

**I have a Generac GP 5000. Just turned the gas selector to on…**

I have a Generac GP 5000. Just turned the gas selector to on and the carburetor is leaking gas. Comes from the back of the carb through a open port.

http://www.justanswer.com/small-engine/7a0e1-generac-gp-5000-just-turned-gas-selector.html

**Ken's Generator Resources Generac GP5500 Fuel System Leak Fix !!! Posted 10/1/2012**

…

I own a three year old Generac GP 5500 (model 005623-1) with Huayi carb that has this problem. Inspection of the float needle showed it to be made of a bright aluminum alloy, with a synthetic tip. This needle had corrosion and pitting on it's body, while the synthetic tip had minor wear. Their was no corrosion on the float shaft or needle spring. The needle did not appear to have a plating to protect it from corrosion. I believe the lack of a plating to be the cause of this fuel leak problem.

While trash and debris in the float bowl can cause fuel leaks, I now believe that my fuel leak was caused by a faulty float needle. Corrosion on the needle caused it to stick in the open position and allowed fuel to flow unrestricted into the carburetor.

A big thanks goes out to Bill Cicio In NY, USA, for an excellent picture of how a float needle looks when corroded. He has been working on an Generac GP7500E that has the same fuel leak problem as my GP-5500.

http://home.earthlink.net/~kjvann/fuelleak.html

**Generac Issue** *(by AllyM [NJ]*★★★*)* Posted on: Jan 16, 2013 5:24 AM

Message:

Two year old 10kw with only 75 running hours on it developed an oil leak. At first, technician thought it was from topping up oil and adding too much. He saw it first in October. However, it turned out to be a leak at a small engine gasket about the size of one you might find on a small canning jar.

The tough issue is that it is only 5 months out of warranty which was up in July and 75 hours is a very low amount of running time for a two year old unit. Technician told me that after two years, some have hundreds of hours.

So, if you find even the smallest amount of oil puddled in the bottom of the case, get someone out there and get it fixed before you are out of warranty. Technician told me he has done about 15 of all sizes. For myself, I am going to look into what the NJ lemon laws might cover since the repair cost me $529 for two men to pull it apart and replace the gasket. Oh, Generac did pay for the gasket. -- 69.141.xxx.xxx

http://www.mrlandlord.com/landlordforum/display.php?id=14051500

September 14th, 2013

HKFever

Senior Member

🗏**Leaking front oil seal**

Well you can add my M#5883 (start-up 4-13-12) to gensets with a leaking front oil seal. I had noticed oil under the front mounting plate and then oil on the base pan. I cleaned it up and kept monitoring it and today there was oil on the base pan and plate. This motor has only 45.1 hrs on it.

Model# 5883 S# 701**** (10Kw LP) w/Advanced Load Center (5449). Start-up 4-13-12

---

Last edited by HKFever; September 15th, 2013 at 08:22 AM..

http://www.zillerelectric.com/forums/showthread.php?t=2842

October 18th, 2013

ohmslaw

Senior Member

I have repaired 10 -15 of these. I now check the front seal at the same time. It takes 10 minutes longer but I had one that was leaking at the seal also and did not catch it.

Tim

http://www.zillerelectric.com/forums/showthread.php?t=2842&page=2

October 18th, 2013

VNV1967

Member

Don't understand why so many of these leak ??? Seems they should be able to find the problem at the factory and correct it.

http://www.zillerelectric.com/forums/showthread.php?t=2842&page=2

November 15th, 2013

Milford177

Junior Member

Hi Folks - update on the oil leak issue. The Generac Tech replaced the bolts and gasket around the oil breather as specified in the service bulletin. Ran the unit for 40 minutes - no more leaks or oil dripping from around the fly wheel area. Labor cost $225 since I am in year 3 of the warrantee. Going after Generac next for re-embursment since my unit is still less than 3 years old and only has 123 hours on it. Seems to me that putting out a service bulletin (SIB-12-04-EACG) for a known manuafacturing/design defect should be a refundable expense. Any advise would be appreciated....

http://www.zillerelectric.com/forums/showthread.php?t=2842&page=4

## **CLASS ACTION ALLEGATIONS**

20.    Plaintiff seeks to bring this case as a class action, pursuant to Rule 23 of the Federal

Rules of Civil Procedure.  The proposed class is defined as follows:

All individuals and entities that have owned or own Generac generators subject to Generac's two-year warranty during the class period in the United States.

Additionally or alternatively, Plaintiff seeks to bring this case on behalf of the following Illinois subclass:

> All individuals and entities that have owned or own Generac generators subject to Generac's two-year warranty during the class period in the State of Illinois.

Excluded from these Classes are Defendant, any entity in which Defendant has a controlling interest or which has a controlling interest of Defendant, and Defendant's legal representatives, assigns, and successors; federal governmental entities and instrumentalities of the federal government; and states and their subdivisions, agencies, and instrumentalities. Also excluded are the judge to whom this case is assigned, his or her staff, and any member of the judge's immediate family.

21.    Plaintiff reserves the right to re-define the class and/or subclass (collectively "the Classes") prior to class certification.

### Numerosity

22.    The members of the proposed Classes are so numerous that joinder of all members is impracticable.

23.    The exact number of Class members is unknown as such information is in the exclusive control of Defendant. However, Plaintiff believes the Classes consist of many thousands of consumers, making joinder of Class members impracticable.

### Common Questions of Law and Fact

24.    Common questions of law and fact affect the rights of each Class member, and common relief by way of damages is sought for Plaintiff and Class members.

25.    The harm that Defendant has caused or could cause is substantially uniform with respect to Class members. Common questions of law and fact that affect the Class members include, but are not limited to:

a. Whether Generac sold and entered a defective product into the stream of commerce;

b. Whether Generac failed to prevent damages which occurred because of the defective product it designed, tested, manufactured and sold into the stream of commerce;

c. Whether Generac failed to instruct or to warn consumers about the reasonably foreseeable dangers of installing its Generators;

d. Whether Generac was unjustly enriched by the sale of the defective product;

e. Whether Generac breached the warranties it represented as existing;

f. Whether Generac engaged in fraudulent, false, deceptive, and/or misleading misconduct with respect to the sale of the generators or processing and handling of warranty claims; and

g. Whether Generac intentionally or negligently misrepresented, omitted, or concealed information regarding the characteristics or quality of the generators.

**Typicality**

26. Plaintiff's claims and defenses are typical of the claims and defenses of the Class members.

**Adequacy of Representation**

27. The representative Plaintiff will fairly and adequately assert and protect the interests of the Classes:

a. He has retained attorneys who are experienced in prosecuting class action claims and will adequately represent the interests of the classes; and

b. He has no conflict of interest that will interfere with the maintenance of this class action.

**Superiority**

28. A class action provides a fair and efficient method for the adjudication of this controversy for the following reasons:

a.  The common questions of law and fact set forth above predominate over any questions affecting only individual class members;

b.  The Classes are so numerous as to make joinder impracticable. However, the Classes are not so numerous as to create manageability problems. There are no unusual legal or factual issues which would create manageability problems;

c.  Prosecution of a separate action by individual members of the Classes would create a risk of inconsistent and varying adjudications against Defendant when confronted with incompatible standards of conduct;

d.  Adjudications with respect to individual members of the Classes could, as a practical matter, be dispositive of any interest of other members not parties to such adjudications, or substantially impair their ability to protect their interests;

e.  The claims of the individual Class members are small in relation to the expenses of litigation, making a class action the only procedure in which Class members can, as a practical matter, recover. However, the claims of individual Class members are large enough to justify the expense and effort in maintaining a class action.

## COUNT I

### Breach of Express Warranty

29.    Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein and further alleges as follows:

30.    Defendant advertised, marketed, and sold the generators into the stream of commerce with the intent that they would be purchased by Plaintiff and the Class members.

31.    Defendant expressly warranted that the generators would be free from defects in the workmanship or materials for a period of two years from the date of purchase by the consumer.

32.    Defendant's written representations regarding the quality of the generators created express warranties that became part of the basis of the bargain that Plaintiff and the Class members entered into when they purchased the generators.

33.    These informal express warranties include but are not necessarily limited to the marketing representations made by Generac and relied by Plaintiff and the Classes. They include the following marketing representations made by Generac:

a.    "Generac's OHV engine with splash lubrication provides a long engine life."

b.    "Large capacity steel fuel tank … provides durability and extended run times."

c.    "Hardened steel tube cradle for added durability and strength."

d.    "During a power outage, Generac portable generators make sure the most important items—lights, refrigerators and freezers, sump pumps, even space heaters and window air conditioners—are up and running, minimizing any disruption to your lifestyle."

e.    "When you choose Generac, you're choosing to have peace of mind and the power to live."

f.    "Generators are often required to run for hours, days or even weeks at a time. Continuous use can cause a lot of strain on engines not specifically engineered to withstand extended run times. We have developed robust engine solutions to ensure our generators provide the reliability necessary to power through these situations."

g.    "Generac offers more options than anyone else, to make sure there's a system to fit your needs. All are tested and listed for safe, reliable performance."

h.    "Consumers choose Generac automatic generators not only for their proven reliability, but also for the innovative features engineered with home and business owners in mind."

i.    "Tough. Reliable. Purpose-Built."

34.    Defendant breached its express warranties to Plaintiff and the Class members by failing to deliver generators free from defects as promised.  Rather, the generators are prone to leak oil, and as a result, the generators' motors are prone to burn out.  These defects prevent the generators from performing as warranted.

35.    Defendant breached its express warranties to Plaintiff and the Class members by failing to repair the defective generators or replace them with generators free from the defects discussed herein.

36.    Defendant breached its express warranties to Plaintiff and the Class members by failing to deliver generators that are durable, reliable, and able to withstand extended run times.

37.    Defendant's express warranties fail of their essential purpose because Defendant has failed to make the necessary repairs to Plaintiff and the Class members' generators within a reasonable time and Defendant is unable to replace the defective generators with generators free from the defects discussed herein.

38.    Defendant has received notice of the breaches of warranty alleged herein by virtue of complaints made by purchasers of the generators.  Upon information and belief, Defendant has received claims, complaints, and other notice of defect from its consumers advising Defendant that their generators leak oil, and that, by extension, the motors of the generators burn out.

39.    Plaintiff called Defendant and put them on notice of his generator's defects.  In addition, Plaintiff brings this Complaint giving notice to Defendant of Plaintiff and the Class members' claims, including breach of express warranties.

40.    Defendant has repeatedly denied, failed to pay in full, or failed to respond to the warranty claims made by Plaintiff and the Class members, either by failing to respond to consumers' complaints or disclaiming any responsibility and directing consumers to Generac's authorized/certified dealers.

41.    As a result, Plaintiff and the Class members have suffered actual damages in that they purchased and installed products that are defective and that have failed or are failing prematurely.  These failures have required or are requiring Plaintiff and the Class members to incur

significant expense repairing or replacing their generators or parts thereof, and repairing damage caused by the defective generators.

42.     As a direct and proximate result of Defendant's breaches of warranty, Plaintiff and the Class members have suffered and will continue to suffer damages and losses in an amount to be determined at trial.

## COUNT II

### Breach of Implied Warranty

43.     Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein and further alleges as follows:

44.     At all times during the Class period, Defendant was a commercial manufacturer and supplier of the generators at issue in this case.  Defendant designed, tested, developed, manufactured, distributed, and marketed the generators for eventual sale to retail buyers.

45.     Defendant expected its generators to, and they did in fact, reach consumers without substantial change in the condition in which they were supplied.

46.     Defendant impliedly warranted that the generators were properly designed, developed, manufactured, distributed, and marketed; that the designs and materials were proper and of first-class and workmanlike quality; that the generators conformed to the promises and affirmations of fact on their containers and labels; and that the generators were fit for their intended use.

47.     Plaintiff and the Class members relied on Defendant's skill and judgment in manufacturing the generators.  Plaintiff and the Class members likewise relied upon the promises contained within Defendant's warranties and believed that the generators were free from defects in workmanship and materials and fit for their intended use and purpose.

48.     Defendant breached its implied warranties by failing to provide adequate and proper designs and/or materials for the generators, failing to inspect and identify generators and/or materials with defects, failing to provide defect-free generators to Plaintiff and the Class members, and failing to provide generators to the promises and affirmations of fact made on their containers and labels.

49.     Defendant's generators were and are defective and not of merchantable quality, and were and are unfit for their intended use.

50.     The generators fail to perform in accordance with the reasonable expectations of Plaintiff and the Classes, and the benefits of the design of the generators do not outweigh the risk of their failure.

51.     Defendant had a duty to disclose to the consuming public the foreseeable risks associate with the use of the generators—specifically, that the generators tended to leak oil, which in turn caused the motors to burn out.  Defendant further had a duty not to put defective products on the market.

52.     Defendant breached its duty to Plaintiff and the Class members by failing to disclose the defects associated with the generators and by allowing the sale and use of the generators when Defendant knew they would not perform as intended.

53.     Defendant has received notice of the breaches of its implied warranties alleged herein by virtue of complaints made by purchasers of the generators.  Upon information and belief, Defendant has received claims, complaints and other notice of defect from its consumers advising it of the defects in the generators.  In addition, Plaintiff has brought this Complaint to give notice to Defendant of Plaintiff and Class members' claims, including breach of implied warranties.

54.    But for Defendant's breach of its implied warranties, Plaintiff and the Class members would not have suffered the damages and losses alleged herein in an amount to be determined at trial.

## COUNT III

### Fraudulent Misrepresentation

55.    Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein and further alleges as follows:

56.    Defendant had a duty to consumers and to the public to disclose the defective nature of its generators and not to conceal, omit or misrepresent material information about the design, reliability and performance of its products.

57.    Defendant knew that its generators suffered from a defect that caused that them to leak oil and that a failure to repair the defect would cause the motors to burn out.  Nevertheless, Defendant engaged in a scheme to conceal the generators' defect from Plaintiff and the Class members.  Defendant made false statements to Plaintiff and the Class members that the generators were free from defects, durable, reliable, and able to withstand extended run times.

58.    In making these misrepresentations and omissions of material facts regarding the characteristics and capabilities of the generators in its advertising and product information and on its website, Defendant knew or should have known that Plaintiff and the Classes would rely on Defendant's representations to their detriment and damage.  Defendant concealed the defect with the intent to induce Plaintiff and the Class members to purchase its generators.

59.    Plaintiff and the Class members were unaware of the falsity of Defendant's representations and, as a result, justifiably relied on them in purchasing the generators.  They specifically relied on Defendant's representations that the generators were free from defects,

reliable, durable, and able to withstand extended run times when they purchased Defendant's generators.

60.     Defendant made false representations and omissions to Plaintiff and the Class members in the course of its business with the intent that Plaintiff and Class members would rely on them and purchase the generators.

61.     As a direct, proximate, and foreseeable result of Defendant's misrepresentations and omissions of material fact, Plaintiff and the Class members s have suffered actual damages in that they purchased defective generators.

62.     As a result of Defendant's misconduct, Plaintiff and the Class members have suffered and will continue to suffer damages that include not only the full cost to attempt to repair the generators, which includes, without limitation, consequential and incidental damages.

63.     As a direct, proximate, and foreseeable result of Defendant's fraudulent misrepresentations, Plaintiff and the Classes sustained damages in an amount to be determined at trial.

## COUNT IV

### Negligent Misrepresentation

64.     Defendant had a duty to consumers and to the public to disclose the defective nature of its generators and not to conceal, omit or misrepresent material information about the design, reliability and performance of its products.

65.     Defendant made false statements to Plaintiffs and the Class members that the generators were free from defects, durable, reliable, and able to withstand extended run times. Defendant was careless and negligent in making these statements because it knew, or reasonably

should have know, that its generators suffered a defect that caused them to leak oil and their motors to burn out and that they were not reliable, durable, or able to withstand extended run times.

66.    Defendant made these statements with the intent to induce Plaintiff and the Class members to purchase its generators.  Plaintiff and the Class members were unaware of the falsity of Defendant's representations and, as a result, justifiably relied on them in purchasing the generators.  They specifically relied on Defendant's representations that the generators were free from defects, reliable, durable, and able to withstand extended run times when they purchased Defendant's generators.

67.    As a direct, proximate, and foreseeable result of Defendant's misrepresentations and omissions of material fact, Plaintiff and the Class members s have suffered actual damages in that they purchased defective generators.

68.    As a result of Defendant's misconduct, Plaintiff and the Class members have suffered and will continue to suffer damages that include not only the full cost to attempt to repair the generators, which includes, without limitation, consequential and incidental damages.

69.    As a direct, proximate, and foreseeable result of Defendant's negligent misrepresentations, Plaintiff and the Classes sustained damages in an amount to be determined at trial.

## **COUNT V**

### **Negligence**

70.    Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein and further alleges as follows:

71.     Defendant owed a duty to Plaintiff and the Class members to exercise reasonable care in the design, testing, manufacture, quality control, advertising, warranting, and marketing of the generators.

72.     Defendant breached its duty to Plaintiff and the Class members by designing, testing, manufacturing, selling, advertising, and warranting defective products to them and by failing to take those steps necessary to repair or otherwise discontinue selling defective products to consumers.

73.     Defendant was aware, or reasonably should have been aware, that the generators were defective and did not perform their intended use.

74.     When they purchased the generators, Plaintiff and the Classes were not aware of their defective nature.

75.     As a direct and proximate cause of the foregoing, Plaintiff and the Classes have suffered and will continue to suffer damages and economic loss described fully above, in an amount to be proven at trial.

76.     Plaintiff and the Classes are entitled to damages in an amount to be determined at trial.

### COUNT VI

### Unjust Enrichment

77.     Plaintiff incorporates by reference all preceding paragraphs, except those alleging the existence of a contract between him/her and Defendant, as if fully set forth herein, and further alleges as follows:

78.     Plaintiff alleges in the alternative to their contract claims that Defendant, through deliberate misrepresentations or omissions in connection with the advertising, marketing,

promotion, and sale of the generators, reaped benefits that resulted in Defendant's wrongful receipt of profits.  Accordingly, Defendant will be unjustly enriched unless it is ordered to disgorge those profits for the benefit of Plaintiff and the Classes.

79.    Equity demands disgorgement of Defendant's ill-gotten gains.

80.    As a result of Defendant's wrongful conduct, Plaintiff and the Class members are entitled to restitution from and institution of a constructive trust disgorging all profits, benefits, and other compensation obtained by Defendant.

## COUNT VII

**Violation of Illinois Consumer Fraud and Deceptive Business Practices Act**

81.    Plaintiffs reallege and incorporate by reference each of the paragraphs above.

82.    The conduct described in this Complaint constitutes a violation of the Illinois Consumer Fraud and Deceptive Business Practices Act (the "ICFA"), 815 Ill. Comp. Stat. 505/1 *et seq*, and substantially similar state consumer protection statutes.

83.    Defendant engaged in unfair or deceptive practices in violation of the ICFA when it (1) represented the generators were durable and free of defects and met industry standards when, at best, it lacked credible evidence to support  those claims, and, at worst, knew the generators would fail prematurely, were not suitable for use, and otherwise were not as warranted and represented by Defendant; (2) failed to disclose to, or concealed from, consumers, installers, and distributors material facts about the defective nature of the generators; (3) failed to disclose its own knowledge of the defective nature of the generators; and (4) limited its warranty obligations in an unfair and unconscionable way in light of its failure to disclose the defective nature of the generators.

84.    Defendant either knew or should have known its generators were defective, would fail prematurely, and were not as warranted and represented by Defendant.

85.     Defendant's conduct and omissions described herein repeatedly occurred in Defendant's trade or business and were capable of deceiving a substantial portion of the consuming public.

86.     The facts concealed, omitted, or otherwise not disclosed by Defendant are material facts in that Plaintiff and any reasonable consumer would have considered those facts important in deciding whether to purchase the generators.  Had Plaintiff and the Class members known the generators were defective, they would not have purchased the generators, or they would have either negotiated additional warranty coverage, negotiated a lower price to reflect the risk, or simply avoided the risk all together by purchasing different generators.

87.     Defendant intended that Plaintiff and the Class members would rely on the deception by purchasing its generators, unaware of the undisclosed material facts.  Defendant knew that Plaintiff and the Class would rely on its product literature and advertisements, statements and representations.  This conduct constitutes consumer fraud within the meaning of the various consumer protection statutes.

88.     Defendant's unlawful conduct is continuing, with no indication that Defendant will cease.

89.     As a direct and proximate result of the deceptive, misleading, unfair and unconscionable practices of the Defendant set forth above, Plaintiff and Class Members are entitled to actual damages, compensatory damages, penalties, attorney's fees and costs as set forth in Section 10a of the CFA.

90.     The Defendant's deceptive, misleading, unfair, and unconscionable practices set forth above were done willfully, wantonly, and maliciously, entitling Plaintiff and the Class members to an award of punitive damages.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that this case be certified and maintained as a class action and for judgment to be entered upon Defendant as follows:

1.      For economic and compensatory damages on behalf of Plaintiff and all the Class members;

2.      For restitution;

3.      For actual damages sustained together with any and all statutory damages, multipliers, or enhancements allowed;

4.      For punitive damages, as otherwise applicable;

5.      For injunctive and declaratory relief;

6.      For reasonable attorneys' fees and reimbursement of all costs for the prosecution of this action; and

7.      For such other and further relief as this Court deems just and appropriate.

**JURY DEMAND**

Plaintiff hereby demands a trial by Jury on all issues so properly triable thereby.

Dated: February 17, 2017                    Respectfully submitted,

                                                /s/ Michael J. Flannery
                                                Michael J. Flannery
                                                CUNEO GILBERT & LADUCA, LLP
                                                7733 Forsyth Boulevard, Suite 1675
                                                Clayton, MO 63105
                                                Telephone:   (314) 226-1015
                                                Facsimile:    (202) 789-1813
                                                mflannery@cuneolaw.com

Charles J. LaDuca
Katherine Van Dyck
CUNEO GILBERT & LADUCA, LLP
4725 Wisconsin Avenue, NW, Suite 200
Washington, DC 20016
Telephone:   (202) 789-3960
Facsimile:     (202) 789-1813
charles@cuneolaw.com
kvandyck@cuneolaw.com

Michael McShane
S. Clinton Woods
AUDET & PARTNERS, LLP
711 Van Ness Avenue, # 500
San Francisco, California 94102
Telephone:   (415) 568.2555
Facsimile:     (415) 576-1776
mmcshane@audetlaw.com

Robert K. Shelquist
Craig S. Davis
Rebecca A. Peterson
LOCKRIDGE GRINDAL NAUEN P.L.L.P.
100 Washington Avenue S.
Suite 2200
Minneapolis, MN 55401
Telephone:   (612) 339-6900
Facsimile:     (612) 339-0981
rkshelquist@locklaw.com
csdavis@locklaw.com
rapeterson@locklaw.com

Charles E. Schaffer (*pro hac vice*)
LEVIN, FISHBEIN, SEDRAN & BERMAN
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Telephone:   215-592-1500
cschaffer@lfsblaw.com

J. Barton Goplerud
Brian O. Marty
SHINDLER, ANDERSON, GOPLERUD &
WEESE, P.C.

5015 Grand Ridge Drive, Suite 100
West Des Moines, IA 50265
Telephone:   (515) 223-4567
Facsimile:   (515) 223-8887
goplerud@sagwlaw.com
marty@sagwlaw.com,

***Attorneys for Plaintiff***